Attorney General Loving has asked me to respond to your request for an Attorney General Opinion on various questions about allowing students to participate during the school day in off-campus released-time programs. Because your question may be answered by reference to controlling statutes and case law, this office has determined your request should be answered through this informal letter.
The discussion which follows is not an official opinion of the Attorney General. Rather, the following analysis and conclusions, while solely my own, have been reached after careful research of the questions you have raised.
In your letter you asked, in effect, the following questions:
 1. Is it constitutional for a public school district to allow students to participate during the school day in off-campus released time programs for religious or other instructional enrichment activities conducted by persons not employed by the school?
 2. Under Oklahoma law may a school district's board of education allow students to participate in released-time programs?
 3. May a released-time program be considered by the State Board of Education as contributing to a school's efforts to meet outcome oriented accreditation requirements pursuant to 70 O.S. 3-104.4 (1991)?
 4. What is the maximum portion of a school day that a student may spend in a released-time program without negatively affecting the district's average daily membership as defined 70 O.S. 18-107 (1993)?
Your first question regarding the constitutionality of released-time programs in public school can be responded to by an examination of a number of federal cases. The key case for Oklahoma regarding released-time programs is Lanner v. Wimmer, 662 F.2d 1349 (10th Cir.1981). The released-time program in Lanner was a permissive program for public school students in grades nine through twelve. The program was available to any student who wanted to enroll in courses sponsored by any religious organization. There was evidence that non-religious activities could be approved in the released-time programs as well.
An enrolling student could request permission to participate in a released-time program on the school district's preregistration forms. The student could be released for one period during the school day throughout the school year to take a religious course off campus. The Tenth Circuit Court of Appeals held that released-time programs do not per se offend the establishment and free exercise clauses of the First Amendment. id. at 1357.
The Court found that the released-time program in Lanner was constitutional. However, the Court stated that public schools cannot assume the burden of gathering attendance slips because there is a less entangling alternative. For example, "it is less entangling but as solicitous of the state's interests to require released-time personnel to transmit attendance reports to the public school." id. at 1359.
Granting of state credit in satisfaction of general compulsory school attendance requirements (referred to as "custodial credit") can be accomplished in a constitutional manner as well. The school district in Lanner permitted one hour each day of "custodial credit" to be satisfied by enrollment in a released-time course where no consideration was given to whether the program is religious or non-religious in content. id. at 1362. The state and school officials have an interest in insuring that students are supervised during the hours that school is open. The court stated that "the granting of `credit' for this custodial purpose does not offend the Constitution in the released-time context any more than it does in the context of full-time private religious schools." The court explained that such programs neither encouraged nor discouraged religion any more than similar recognition for attendance at private religious schools. Similarly schools may grant credit towards students' eligibility for extracurricular activities as well as released-time programs to measure a schools' eligibility for state financial aid. Id. at 1362.
In Zorach v. Clouson, 343 U.S. 306, 72 S.Ct. 679,96 L.Ed. 954 (1952), the costs of released-time classes were paid by the religious organizations, and the public school did not enforce attendance at the classes. The released-time program discussed in Zorach was found constitutional. However, distributing religious materials and making announcements during school regarding released-time programs is not permissible. Perry v. School Dist. No. 81, 344 P.2d 1036
(Wash. 1948).
Although released-time programs can be structured in a way that makes them constitutionally permissible under federal law, whether a particular program passes constitutional muster is a question of fact. Furthermore neither state laws nor state rules address the topic of released-time programs.
Question two asks whether, under Oklahoma law, a local board of education may allow students to participate in released-time programs. Although local school boards cannot point to any specific statutory provisions, Title 70 O.S. 5-117 (1993) defines the powers and duties of local boards of education. The statute states:
 "The board of education of each school district shall have power to . . .
 2. Make rules, not inconsistent with the law or rules of the State Board of Education, governing the board and the school system of the district,"
Neither Oklahoma statutes nor the rules of the Department of Education address the subject of released-time programs. It appears that a local board of education has the authority to implement released-time programs. However, to comply with state statutes and rules regarding attendance the scheduling of released-time must be carefully considered.
In question three you asked whether a released-time program could be considered by the State Board of Education as contributing to a school's efforts to meet outcome-oriented accreditation requirements pursuant to 70 O.S. 3-104.4 (1991). These standards for accreditation are well over 200 pages. To examine and analyze be accreditation requirements as they relate to a particular school's released-time program would be a question of fact which cannot be answered by our office. 74 O.S. 18b(A)(5) (1993)
Question four involves the maximum portion of a school day that a student may spend in a released-time program without negatively affecting the district's average daily membership as defined in 70 O.S. 18-107 (1993). Title 70 O.S. 18-101 et seq. as amended at 70 O.S. 18-103.1 (1993) et seq. regulates state aid to schools. Specifically 70 O.S. 18-107(2) defines Average Daily Membership as:
 "(t)he average number of pupils present and absent in a school district during a school year. Average Daily Membership shall be calculated by dividing the sum of the pupil's total days present and total days absent by the number of days taught. Provided, a pupil who has been absent twenty (20) consecutive days shall be taken off the roll beginning the 21st day and thereafter shall not be considered in a district's average daily membership calculations until the pupil is placed on the roll in the district."
Average Daily Attendance is defined in 70 O.S. 18-107(1) (1993) as:
 "(t)he legal average number of pupils, kindergarten through grade twelve, in a school district during a school year as determined pursuant to the provisions of Section 70 O.S. 18-111 of this title. A day of school for kindergarten shall be two and one-half (2-1/2) hours."
Oklahoma Administrative Code 210:10-1-5-(f) states:
 "A school day for any group of pupils shall consist of not less than six (6) hours . . . One-half (1/2) of a school day for any group of pupils, shall consist of not less than three (3) hours devoted to school activities with the exceptions of the first grade, which shall consist of not less than two and one-half (2-1/2) hours. All teachers are expected to record half-day (1/2) absences when they are due and to account for only half-day (1/2) attendance for such pupils in the reports. The pupil must be in attendance for at least two (2) hours in the morning or two (2) hours in the afternoon to be recorded present for one-half (1/2) day unless the pupil is a senior in high school and is enrolled in a full daily schedule and completes such schedule . . . An excused absence during examination periods or because of sickness or for any other reason shall not be counted in attendance. Pupils absent from school in which they are regularly enrolled may be considered as being in attendance if the reason for such absence is to participate in scheduled school activities under direction and and supervision of a regular member of the facility."
(Emphasis added).
State funding for public schools is based on Average Daily Attendance (ADA) and Average Daily Membership (ADM). Average Daily Membership calculations are used to calculate state aid appropriated funds. The ADM is based on the average number of students present each school day. As stated in OAC210:10-1-5(f) students must be in attendance two hours in the morning or two hours in the afternoon to be counted present for one-half day.
Furthermore, constitutionally permissible released-time must be conducted by persons not employed by the school district. This creates another quandary for released-time programs in Oklahoma. Under Oklahoma law for a student to receive an excused absence and be considered in attendance, the activity for which the student is absent must be a scheduled school activity under the direction or supervision of a faculty member. If the pupils are not counted in attendance for the released-time programs the students' attendance records will be adversely affected.
Additionally, students must be involved in school activities for six hours each day. Any released-time program would have to be in addition to the mandatory six hour day. For example, if a school district has a seven hour school day, the local school board could allow released-time programs for one hour each day.
It is, therefore, the opinion of the undersigned attorney that:
 1. Certain released-time programs have been found to be constitutional. Whether a particular program is constitutional depends upon the facts and circumstances of a particular program and cannot be determined in this opinion.
 2. It also appears that a local board of education has the authority to implement released-time programs under 70 O.S. 5-117 (1993).
 3. Whether released-time programs would contribute toward outcome-oriented accreditation requirements is a question of fact which cannot be answered by this office. 74 O.S. 18b(A)(5) (1993).
 4. Average Daily Membership could be affected by attendance in a released-time program. Given that students cannot be counted in attendance for activities rudest the activities are under the direction and supervision of a faculty members, it appears unlikely that attendance in released-time programs is feasible. Whether a particular program can be structured in a way which will not conflict with the Average Daily Membership requirements is a question of fact that our office is not authorized to answer. 74 O.S. 18b(A)(5).
(L. Michelle Stephens)